# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

CYNTHIA A. DREESMAN,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. 15-CV-00121-CJW

**MEMORANDUM OPINION AND
ORDER**

_____

## I.  INTRODUCTION

Plaintiff, Cynthia A. Dreesman (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security disability insurance benefits (DIB) and supplemental security income (SSI), under Title II and XVI (respectively) of the Social Security Act, 42 U.S.C. §§ 405(g), 423, 1383(c)(3).  Claimant contends the Administrative Law Judge (ALJ) erred when she failed to: (1) properly consider claimant's headaches as a severe impairment in determining whether claimant was disabled; (2) afford proper weight to opinions by claimant's treating doctors; and (3) consider claimant's work history in assessing claimant's credibility.  For the reasons that follow, the Commissioner's decision is reversed and remanded for further proceedings consistent with this order.

## II.    FACTUAL BACKGROUND

Claimant was born in 1965.  AR 36.[1]  She completed high school, and attended community and technical colleges, completing courses in CNA training, CMA training, and EMT training.  AR 37.  She has previously worked as a cashier, security guard, emergency medical technician, nurse's aide, shift manager at a fast-food restaurant, cook's helper, and production worker.  AR 24, 38-42.

Claimant suffers from congenital hydrocephalus (AR 298), which is a condition in which excess fluid accumulates in the brain.  Symptoms include headaches, nausea and vomiting, double vision, problems with balance, poor coordination, and changes in cognition.  Claimant was treated for this condition by placement of a shunt in 1990, which apparently drains excess fluid.  AR 284.  Over time, it has been necessary for doctors to "revise" or replace the shunt, apparently to adjust the amount of drainage or in response malfunctions.  Thus, claimant had revisions or replacements in 1997 (AR 284), November 13, 2012 (AR 288), November 25, 2012 (AR 306-15), January 4, 2013 (AR 362), and February 20, 2013 (AR 463).

Throughout the period from the fall of 2012 to the summer of 2014, claimant reported suffering from headaches, the presence of which would vary in frequency and severity.  On November 9, 2012, claimant reported to her treating neurologist, Dr. Saul Wilson, that she had been suffering chronic pain for the past year, stating that she had headaches when lying in bed, but that they were better when she got up.  AR 539.  On November 24, 2012, claimant was admitted to the hospital with a headache, dizziness, nausea, vomiting and blurred vision.  AR 305, 310.  She reported the symptoms had improved immediately after the "revision" of her shunt on November 10, 2012, but the

---

[1] "AR" refers to the administrative record below.

2

symptoms had recently returned.  AR 310.  For about a week after a shunt revision on November 25, 2012, claimant reported significant improvement in her headaches.  AR 306, 339.  By December 28, 2012, claimant was again suffering from headaches that began in the morning and got worse throughout the day.  AR 339.  On December 29, 2012, claimant reported to the emergency room with a headache.  AR 345-46.  Over the course of the next several days, claimant continued to suffer from a headache as medical staff adjusted her shunt setting until she improved and was discharged from the hospital.  AR 345-47.  She was readmitted to the hospital on January 4, 2013, however, due to an infection in her shunt, requiring another revision.  AR 361-62.  On February 1, 2013, at a follow-up appointment, claimant reported that she had not had a headache since her discharge and that she was pain free.  AR 450.  A shunt malfunction required another shunt revision in February 2013.  AR 462-64.  By March 8, 2013, claimant was again reporting headaches.  AR 554-55.  But, when she saw Dr. Wilson again on May 24, 2013, she was "doing well from the headache standpoint, but continu[ed] to have some difficulty with concentration and memory."  AR 617.  On August 14, 2013, claimant reported to another doctor that she had a recent increase in dizziness and headaches.  AR 649.  On August 27, 2013, she reported to Dr. Ryan Arnevik, her primary care physician, that she was still having headaches, and that they were becoming "slightly more frequent," occurring on average once every other day.  AR 645.  On September 5, 2013, claimant presented to neurosurgery for worsening headaches and dizziness, indicating that her baseline headache pain was 6 out of 10, with worse headaches every other day with pain rated at 9 out of 10.  AR 768.  Claimant saw Dr. Arnevik regularly throughout the rest of 2013 and into 2014, with periodic reports of dizzy spells and headaches.  AR 700, 705-07, 709, 714, 718, 720, 721, 724.  On July 14, 2014, claimant returned to neurosurgery with headaches.  AR 775.  She stated that her headaches had been getting

progressively worse during the preceding three weeks, rating her pain at 7-8 out of 10. *Id*.

## III.   PROCEDURAL BACKGROUND

Claimant previously applied for DIB and SSI in 2005 and 2009, but the Commissioner denied those applications because claimant continued to be gainfully employed. AR 8. She continued to work part-time as a volunteer EMT for an ambulance service, pursuant to which she was paid when she responded to a call. AR 8-9, 11. She filed the instant application for DIB and SSI on February 19, 2013, and February 25, 2013 (respectively). AR 182-84; 200-204. Claimant alleged an onset of disability beginning November 1, 2012. AR 182. She claimed she was disabled due to a brain injury resulting in continuing problems, use of a cane/walker for ambulation, hyperthyroidism, and high cholesterol. AR 220.

The Commissioner denied claimant's application on July 5, 2013, and upon reconsideration on September 25, 2013. AR 64, 80. Claimant then requested a hearing before an ALJ. ALJ Tela Gatewood conducted a video hearing on October 20, 2014 (the Hearing), and issued a decision denying claimant's application on August 14, 2015. AR 5-30.[2] Claimant sought review by the Appeals Council, which denied review on September 9, 2015 (AR 1-4), leaving the ALJ's decision as the final decision of the Commissioner.

---

[2] Claimant argues that the ten-month delay between the hearing and decision is "highly significant" because (1) claimant's age category changed during this period and (2) the ALJ was criticized in a newspaper article during this time period for the slowness of her decisions, causing some of her cases to be reassigned. Doc. 17, at 2 n.1. Claimant argues that the ALJ's allegedly erroneous decision was the result of "hastened analysis." *Id*. The court finds the delay insignificant to the merits of this dispute. First, claimant's age category did not factor into the ALJ's decision or any issue raised by claimant in her request for judicial review. Second, claimant's assertion that the ALJ erred because of hastened decision-making is pure speculation and is, in any event, irrelevant to whether the ALJ did, in fact, err.

On November 4, 2015, claimant filed a complaint in this court seeking review of the Commissioner's decision. Doc. 4. On February 11, 2016, with the consent of the parties, United States District Court Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 15. The parties have now briefed the issues, and on June 21, 2016, the matter was deemed fully submitted and ready for decision. Doc. 22.

## IV. DISABILITY DETERMINATOINS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A), 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work

activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory and other requirements" of the claimant's past relevant

work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step

Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## V.    *THE ALJ'S FINDINGS*

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in her written decision.

At Step 1, the ALJ found claimant was not gainfully employed and had not engaged in substantial gainful activity since November 1, 2012.  AR 11.

At Step 2, the ALJ determined claimant had the following severe impairments: "A shunt malfunction with associated headaches and dizziness, a depressive disorder, and obesity."  AR 12.  The ALJ found "[t]he above impairments have been determined by medically acceptable evidence including signs, symptoms, and laboratory findings . . . [that] have had more than a minimal effect on the claimant's ability to perform basic work activities for a continuous period of at least twelve months."  *Id*.  The ALJ found other claimed impairments, including restless leg syndrome and periodic upper respiratory and periodic sinus issues were not severe.  *Id*.

At Step 3, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment.  AR 12.  In addressing claimant's headaches, the ALJ noted that there was no listed impairment for headaches, then proceeded to analyze whether claimant's headaches medically equaled the listed impairment for brain injuries or neurological impairments.  *Id*.  The ALJ found "claimant does not meet the requirements for a listed neurological impairment."  *Id*.  The ALJ also noted that claimant reported "that her headaches were diminished, following her surgeries to fix the shunt."  *Id*.

At Step 4, the ALJ determined claimant's RFC. The ALJ found that claimant could perform a range of light work, as that term is defined in 20 C.F.R. § 404.1567(b). AR 15. The ALJ determined claimant could lift and/or carry and push and/or pull twenty pounds occasionally and ten pounds frequently. *Id*. The ALJ further found claimant could "stand and/or walk, with normal breaks, for a total of six hours in a workday." *Id*. The ALJ found claimant could "sit, with normal breaks, for a total of six hours in a workday," and could "climb ramps, stairs, ladders, ropes, or scaffolds occasionally." *Id*. Finally, the ALJ found claimant could not "work at unprotected heights or around hazards[,]" but was "able to perform tasks of three to four steps." *Id*. In arriving at claimant's RFC, the ALJ concluded "claimant's statements concerning the intensity, persistence, and limiting effects" of her symptoms were "not entirely credible." AR 19. The ALJ afforded "little weight" to the opinions of claimant's neurologist, Dr. Wilson, and her primary care physician, Dr. Arnevik. AR 21-22. On the other hand, the ALJ credited the opinions of state agency physicians who never examined claimant with "significant weight," afforded the opinion of the consultative psychologist who examined claimant with "significant weight," and only gave the opinion of state agency reviewing psychologist "some weight." AR 22-23.

The ALJ ultimately determined that claimant's RFC classification demonstrated that she was capable of performing her past relevant work as a cashier, security guard, and production worker. AR 24. Accordingly, the ALJ found claimant was not disabled, and so did not reach Step 5 of the analysis.

## VI.   THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (internal citation omitted); *see* 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .").   "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation omitted).   The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotations omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted).   The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).   The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989) (internal citation omitted).   The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).   Instead, if after reviewing the evidence, the

court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VII. DISCUSSION

Claimant argues the ALJ's decision is flawed for three reasons:

1.     Claimant argues the ALJ erred in her analysis of claimant's headaches. Specifically, claimant argues that the ALJ erred at Step 3 when she failed to evaluate whether claimant's headaches met the disability at listing 11.03. Doc. 17, at 6-8. Further, claimant argues the ALJ erred at Step 4 by failing to provide for any work-related limitations in the RFC assessment related to claimant's headaches and dizziness. Doc. 17, at 8-10.

2.     Claimant argues the ALJ failed to give proper weight to her treating physicians' opinions, and that substantial evidence cannot support the ALJ's decision when the ALJ relied on the opinions of non-examining physicians. Doc. 17, at 10-17.

3.     Claimant argues the ALJ erred in assessing claimant's credibility because the ALJ did not consider claimant's work history. Doc. 17, at 17-20.

The court will address these arguments separately below.

*A.* ***The analysis regarding claimant's headaches***

As noted above, claimant makes two arguments regarding the ALJ's analysis of claimant's headaches. First, claimant argues that at Step 3, the ALJ should have analyzed whether claimant's headaches met or were equivalent to the listing at 11.03. Second, claimant argues that at Step 4, the ALJ failed to provide any limitation for claimant's headaches in arriving at the RFC assessment. The court will address each of these sub-arguments in turn.

1. <u>Headaches and Listing 11.03</u>

Claimant argues that the ALJ erred when she failed to determine whether claimant had impairments that met or equaled those under Listing 11.03, which addresses "non-convulsive epilepsy" because it was the most analogous of the listings. Doc. 17, at 6-7. The Commissioner argues that the ALJ did not err because headaches were a symptom of her brain injury and not themselves a limitation, or alternatively, claimant's headache limitations would not meet or equal limitations under Listing 11.03. Doc. 20, at 6-9.

As noted above, the ALJ found claimant had a "severe impairment" of "a shunt malfunction with associated headaches and dizziness." AR 12. At Step 3, the ALJ asserted "there is no listing for headaches" and proceeded to analyze whether claimant's headaches met the listed impairments for brain injuries or neurological impairments at Listing 11.01, finding they did not. *Id*.

The court finds unpersuasive the Commissioner's argument that the ALJ did not find claimant's headaches to be an independent, severe impairment. First, claimant's "shunt malfunction" is not an independent physical impairment; it was a mechanical malfunction that caused claimant's headache and dizziness impairments. Second, the ALJ clearly treated claimant's headaches as if they were an independent impairment when the ALJ analyzed whether they equaled the impairments for brain injuries. Third, much

of the ALJ's decision focuses on claimant's headaches and the extent to which headaches impaired her functioning. Finally, the Commissioner cites no case, and the court could find none, that concluded that headaches are not impairments when caused by shunt malfunctions.

The court also finds that the ALJ should have analyzed whether claimant's headaches met or equaled the impairments at Listing 11.03. Migraine headaches are a listed impairment under 11.03. In this case, claimant is not alleging she suffers from migraine headaches, but there is no question she suffers from an unusual congenital condition that can cause headaches, and her medical records reflect a history of her suffering from episodic headaches. Listing 11.03 appears to be analogous to claimant's impairment. Neither the ALJ, nor the state agency consulting physicians, made any reference to Listing 11.03. The Commissioner has provided no reason why Listing 11.03 cannot or should not apply to claimant's condition.

Rather, the Commissioner argues that claimant cannot demonstrate that her condition would meet or equal the limitations at Listing 11.03. Doc. 20, at 6-9. It is true that a claimant bears the burden of showing harm flowed from an agency error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (Department of Veterans Affairs) (citing *Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (Social Security Administration) and *Panhandle Co-op. Ass'n, Bridgeport, Neb. v. E.P.A.*, 771 F.2d 1149, 1153 (8th Cir. 1985) (Environmental Protection Agency)). In other words, "[i]f it is obvious that the evidence of record cannot possibly support a finding that [claimant's] impairment meets or equals Listing 11.03, then the ALJ's error would be harmless and remand would not be necessary." *Mann v. Colvin*, 100 F. Supp. 3d 710, 720 (N.D. Iowa 2015). That is not the case here, however, as the court finds there is evidence in the medical record demonstrating claimant has a long history of suffering from headaches. The ALJ should have considered whether her headaches met or equaled Listing 11.03. *Id*. ("Having

carefully reviewed the record, I find that there is sufficient evidence of chronic, severe migraine headaches during the relevant time period that the ALJ must consider whether that impairment medically equals Listing 11.03."). Had the ALJ conducted such an analysis and concluded claimant's impairment did not meet or medically equal the listed impairment, this court would not reverse that finding "so long as it fell within the 'available zone of choice.'" *Id.*, at 721 (citing *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "Unfortunately, the ALJ did not consider Listing 11.03, meaning there was no 'choice' and, therefore, no 'zone.'" *Id.*

The court is unpersuaded by the Commissioner's argument that "the ALJ found that plaintiff's claims of frequent headache pain were not credible." Doc. 20, at 9. The ALJ's credibility finding is not directly at issue here. The ALJ found claimant had a severe impairment of "shunt malfunction with associated headaches and dizziness." Having made that finding, it was necessary for the ALJ to analyze whether that impairment met or equaled Listing 11.03, even if the ALJ believed the claimant's description of the "intensity, persistence, and limiting effects" of the headaches were "not entirely credible." AR 19.

Accordingly, the court finds that this case should be remanded and that the ALJ should analyze whether claimant's headaches meet or medically equal Listing 11.03.


2. Headaches and the RFC assessment

Claimant argues that the ALJ erred at Step 4 in determining claimant's RFC assessment because the ALJ did not include any limitations related to claimant's headaches. Doc. 17, at 8-10. The Commissioner argues that claimant is inviting the court to impermissibly reweigh the evidence, and asserts the ALJ did account for claimant's headaches in her RFC assessment. Doc. 20, at 10. Specifically, the Commissioner argues that the RFC limitation that claimant not work around unprotected

heights and hazards, and claimant's restriction to performing three to four step tasks account for claimant's headaches.  Doc. 20, at 11.

A claimant's RFC is "the most [the claimant] can still do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a)(1).  "The ALJ must determine a claimant's RFC based on all of the relevant evidence."  *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (internal citation omitted).  This includes "an individual's own description of [her] limitations."  *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence."  *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).  The medical evidence should address the claimant's "ability to function in the workplace."  *Lewis*, 353 F.3d at 646.  At Step Four, the ALJ determines the RFC based on all relevant evidence.  *See Harris v. Barnhart*, 356 F.3d 926, 929-30 (8th Cir. 2004).

The ALJ is not required "to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).  Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole."  *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).  The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

There is no question that the ALJ discussed claimant's headaches at length in her RFC analysis.  *See* AR 12-23.  It is also clear that the ALJ did not find claimant's

description of her headaches as "entirely credible" and afforded greater weight to non-examining state agency consulting physicians than to claimant's treating physicians. *Id.* Even the consulting state agency doctors recognized that claimant's headaches affected her ability to maintain attention and concentration. AR 75, 92-93. The question is whether the limitations the ALJ imposed adequately reflect the impairments resulting from claimant's headaches.

The ALJ's limitation of claimant being able to perform three to four step tasks presumably was intended to address the impact claimant's headaches had on her ability to maintain attention and concentration. Claimant has not identified another limitation that she believes is required. Claimant argues that the ALJ should have "at the very least" added the limitation that she needed "to sit down" because of her dizziness. Doc. 17, at 9. The record, however, contains little evidence that claimant suffered problems from dizziness that required work limitations. Rather, there are only occasional references to claimant feeling dizzy and nothing from her treating doctors that suggest a work limitation is necessary, specifically, to address that issue. In any event, the ALJ addressed this issue by adding the limitations that claimant cannot work at unprotected heights or around hazards. AR 15. Claimant criticizes the RFC because it "anticipates [she] can function 8-hours per day, 5-sayd per week," arguing that the RFC fails to address her "work-related abilities when a headache or dizziness occurs." Doc. 17, at 9. The ALJ afforded significant weight to the non-examining state agency doctors who did not find claimant required limitations based on her headaches and dizziness. AR 22. Based on that evidence, the RFC assessment is not itself inappropriate. Whether the ALJ properly weighed the medical evidence is a different matter, discussed next.

### B. The weight afforded claimant's treating physicians

Claimant argues that the ALJ improperly discounted the opinions of claimant's treating doctors. Doc. 17, at 10-17. The Commissioner maintains that the ALJ acted within the scope of her discretion in discounting these doctors' opinions and affording greater weight to state agency physicians who never examined claimant. Although it is a close call, the court finds that substantial evidence supports the ALJ's decision, and the weight she afforded the various medical professionals fell within her zone of choice.

Generally, it is for an ALJ to determine the weight to be afforded to the opinions of medical professionals, and "to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). An ALJ is required to give "controlling weight" to a treating-source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (holding that an ALJ must give "substantial weight" to a treating physician, but may discount that weight if the opinion is inconsistent with other medical evidence). An ALJ may consider state agency physicians' opinions and may rely upon them in making her findings. *See* 20 C.F.R. § 404.1527(e)(2)(i); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (holding that it is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment). When assessments of state agency medical consultants are consistent with other medical evidence in the record, these assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08.

The opinions of non-examining state agency consulting physicians normally cannot constitute "substantial evidence" in support of an ALJ's decision when those opinions

directly conflict with the opinions of treating or examining sources. *See*, *e.g.*, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) ("The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole.") (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *Dixon*, 324 F.3d at 1002-03 (holding that "[g]iven the contradicting recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work.") (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)).

Claimant cites *Shontos*, *Dixon*, *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004), and *Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir. 2002), for the proposition that "the opinions of non-examining Agency consultants do not constitute substantial evidence when they are directly contradicted by treating and/or examining sources." Doc. 17, at 15-16; Doc. 21, at 5 n.5. Claimant overstates the holdings of these cases. These, and other cases, stand for the proposition that ALJs should generally give greater weight to treating physicians over non-examining ones, and that the opinions of non-examining physicians, standing alone, do not constitute substantial evidence. There is no absolute rule that an ALJ must accept a treating physician's opinion if it conflicts with that of a non-examining physician. Rather, the ALJ is called upon to examine the entire record, consider all of the medical evidence, and assign weight to the evidence in light of the entire record. An ALJ may give the opinions from non-treating, non-examining sources more weight than a treating source's medical opinion when they are also supported by "better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal citation omitted). Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight given to these opinions. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve

conflicts among 'the various treating and examining physicians.'") (quoting *Bentley*, 52 F.3d at 785).

Here, the ALJ gave "little weight" to the opinions of claimant's primary care physician, Dr. Arnevik, and her neurologist, Dr. Wilson, who treated claimant, but gave "significant weight" to the "physical assessments" of the non-examining state agency doctors' opinions. AR 21-23. Whether this was within the ALJ's zone of choice depends on the degree to which there is a basis in the medical evidence to support the ALJ's resolution of the conflict in the medical opinions.

### Dr. Arnevik

The ALJ discounted Dr. Arnevik's opinion concerning limitations arising from claimant's headaches because claimant's shunt malfunctions were managed by neurosurgeons. AR 22. Specifically, Dr. Arnevik noted that claimant suffered from "[i]ntermitten VP shunt malfunctions [which] caus[ed] significant impairment—Managed by Neurosurgery at U. of Iowa City, IA." AR 681. This is consistent with the record as a whole that shows when claimant's shunt malfunctioned, she incurred periods of increased headaches, but when the neurosurgeon managed the issue by replacing or revising the shunt, it relieved her headaches.

The ALJ further discounted Dr. Arnevik's opinion because claimant's headache pain was treated by "routine medications with minimal adjustment or modification." AR 22. The court's review of medical records from Dr. Arnevik's office shows support for the ALJ's conclusion that Dr. Arnevik made occasional, minor adjustments to claimant's medication over time. This was a proper consideration because a condition that can be managed through medication is not disabling. *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (internal quotation and citation omitted)).

Finally, the ALJ discounted Dr. Arnevik's opinion because he submitted his opinions as answers to a form questionnaire. AR 22. The medical records from Dr. Arnevik's office, while they reflect claimant's symptoms and complaints during the course of treatment from November 2011 to April 2014, do not, themselves, reflect Dr. Arnevik observing or identifying limits to claimant's functional capacity. AR 554-97, 645-69, 682-759. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (determining ALJ properly discounted medical source statement when physician's notes "reported no findings of significant limitation or inability to work"). The only place Dr. Arnevik's opinion regarding claimant's functional capacity is reflected, therefore, is on a checkbox form he filled in. AR 678-81. Although Dr. Arnevik endorses multiple work-related limitations on this form, he did not provide any explanation or medical basis for those limitations. "[A] treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement." *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)). Moreover, an ALJ may properly discount an opinion reflected only in a checkbox form. *See*, *e.g.*, *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (internal quotation omitted) ("[R]ecogniz[ing] that a conclusory checkbox form has little evidentiary value when it "cites no medical evidence, and provides little to no elaboration."); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983) ("Because of the interpretive problems inherent in the use of forms such as the physical capacities checklist, our Court has held that while these forms are admissible, they are entitled to little weight . . . .") (internal citations omitted).

Dr. Wilson

In discounting Dr. Wilson's testimony, the ALJ concluded his opinions were internally inconsistent because he wrote two letters on the same day, one excusing claimant from work, and the other releasing her to work as an EMT. AR 21. Claimant

argues the letters are not inconsistent because the first letter addressed claimant's ability to work full time, while the second addressed her ability to work a part-time job. Doc. 17, at 13-14. It was not unreasonable for the ALJ, however, to conclude that a letter recommending claimant be "excused from work indefinitely" (AR 632), is inconsistent with a letter indicating claimant "may resume duty with the volunteer ambulance" (AR 633), regardless of whether the ambulance service was part time work. *See Harris*, 356 F.3d at 930 (holding that it was not unreasonable for an ALJ to conclude that claimant's part-time work was inconsistent with her claim of disabling headache pain). It was also reasonable for the ALJ to conclude that "[t]he skilled duties of the emergency medical technician, even part-time, were not consistent with an individual with persistent cognitive and concentration problems" as described by Dr. Wilson. AR 21.

The ALJ also discounted Dr. Wilson's testimony because the "degree of cognitive limitations were not supported by objective testing." AR 21. Claimant argues that "[i]t is entirely unclear what 'objective testing' could 'support'" Dr. Wilson's testimony. Doc. 17, at 14. The record reflects, however, that neurological testing, including the use of head CT and brain MRI reports, repeatedly showed normal functioning, even during periods where claimant was encountering a malfunctioning shunt and undergoing shunt revisions. *See, e.g.*, AR 454, 511, 581, 638-39; *but see* AR 655 (finding "cognitive functioning was abnormal. Mildly slowed responses.").

The ALJ further discounted Dr. Wilson's opinions because the ALJ believed he "appeared to accept the claimant's reports of subjective complaints at face value." AR 21. This was, candidly, an inference the ALJ drew from the record. It was not, however, an unreasonable one in light of the other medical evidence. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding the ALJ's could properly discount the opinions of treating and examining physicians where the opinions were based largely on the claimant's subjective statements and were inconsistent with other evidence).

Finally, the ALJ discounted Dr. Wilson's opinions because the "record documented improvement following neurosurgical interventions and subsequent neurological examinations were largely intact," which was inconsistent with Dr. Wilson's opinions. AR 21. The court's own review of the record supports the ALJ's conclusion that claimant improved with treatment and had normal neurological findings. *See* AR 284, 288, 306, 312, 362, 375, 416, 454, 468, 502, 511, 523, 568, 761, & 783.

The overall impression the court is left with, upon review of the record as a whole, is that claimant suffered headaches periodically and episodically, with varying degrees of severity, particularly when her shunt malfunctioned, but when she received treatment, her headaches were resolved until the next incident when her shunt malfunctioned. It is clear that claimant suffered a prolonged period of shunt malfunctions with resulting headaches and dizziness, which the ALJ acknowledged "likely [ ] incapacitated" her from November 2012 through April 2013. AR 19. A temporary incapacitation lasting less than twelve months, however, does not constitute a permanent disability. 20 C.F.R. §§ 404.1509, 416.909. There is some support in the record for the opinions of Doctors Arnevik and Wilson, but there is also support in the record for the ALJ to discount the weight of their opinions in light of the other medical evidence.

Ultimately, it is not for this court to weigh the medical evidence or resolve conflict between medical professionals. So long as the ALJ's analysis is reasonable, this court cannot reverse the Commissioner's decision. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) (internal citation omitted) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome."). For that reason, the court finds the ALJ acted within her zone of choice in assessing the weight to give to the doctors' opinions.

### C. *Claimant's work history as it relates to her credibility*

Claimant argues the ALJ erred because the ALJ did not afford her substantial credibility based on her "stellar work history." Doc. 17, at 17-20. There is no dispute that claimant had a consistent work history for twenty-eight years between 1985 and 2012. AR 192-93. The ALJ did not specifically discuss claimant's work history as a credibility issue. During the hearing, however, the ALJ reviewed claimant's work history (AR 38-42), and in the ALJ's decision, mentioned claimant's past employment (AR 11, 24).

In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir. 1984) (internal quotation omitted). *See also Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001) (holding that a consistent work record supports the credibility of a disability claimant). As previously noted, in arriving at a credibility determination, however, an ALJ is not required to discuss every piece of evidence submitted. *Wildman*, 596 F.3d at 966. Therefore, the court finds that the ALJ did not err simply by failing to mention claimant's work history. *See*, *e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007) ("It might have been better if the ALJ had referred specifically to [the claimant's] work record when determining her credibility . . . but we do not think that the ALJ was required to refer to every part of the record, and we think that the portions of the record that [the ALJ] referred to were sufficient to support his credibility determination."); *Leahy v. Astrue*, No. 4:10CV60524AGF, 2011

WL 4407452, at *8 (E.D. Mo. Sept. 21, 2011) (holding that an ALJ's failure to mention a claimant's good work history in making a credibility determination is not sufficient, standing alone, to constitute reversible error); *Bryant v. Astrue*, No. 4:08CV02910JTR, 2009 WL 3062311, at * 4 (E.D. Ark. Sept. 17, 2009) (same).

Even if the ALJ erred by not specifically addressing claimant's work history in determining claimant's credibility, it was harmless error because the ALJ identified grounds upon which the ALJ relied to discount claimant's credibility. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred). The ALJ relied on medical reports where claimant reported relief from her headaches after revisions of her shunt (AR 16-18) and found her reports of headache pain as "inconsistent across sources" (AR 19). The ALJ also apparently found claimant's reported symptoms inconsistent with her continuing "to engage in a wide-range of activities" including working as an EMT. AR 19. The ALJ also found that claimant's description of being dizzy inconsistent with claimant climbing on coral while vacationing in Hawaii and traveling in a "long flight in a crowded plane." AR 20. Finally, the ALJ concluded that claimant had a large economic incentive. *Id*.[3]

---

[3] Claimant takes issue with the ALJ's reliance on financial motive, asserting it was "appalling," referencing two instances where claimant expressed concern about paying for insurance, and arguing that claimant's financial motive was no different from many similarly situated people. Doc. 21, at 4. That claimant's financial motive may be similar to many other applicants does not, however, make it irrelevant to the ALJ's analysis of claimant's credibility. Although this court may not have weighed claimant's financial motive in the same manner, it does not mean the ALJ's analysis was "appalling." It bears noting that, in contrast to her opening brief which maintained a professional tone, claimant's reply brief left an acerbic aftertaste as a result of the many pejorative and accusatory terms it contained. *See, e.g.*, "specious" (Doc. 21, at 2 n.3); "half-truths and further evasions" (Doc. 21, at 3); "deception" (Doc. 21, at 4); "evasions" (Doc. 21, at 4); and "false" (Doc. 21, at 5). This type of vitriolic language is inappropriate and unprofessional, and detracts from the persuasiveness of claimant's arguments.

Therefore, although claimant had a good work history, "[a] good work history [ ] does not negate any other credibility findings that may be made by the ALJ." *Deischer v. Colvin*, No. 4:15-CV-625 NAB, 2016 WL 2997593, at * 6 (E.D. Mo. May 25, 2016). This court might, and probably would, have reached a different conclusion regarding the credibility of claimant's reported symptoms; but, the court cannot find the ALJ erred in her credibility finding simply by failing to reference or give substantial weight to claimant's work history.

Finally, claimant takes issue with the ALJ's comment about her reported earnings from working as an EMT not equating to the stated minimum number of hours of work per month. AR 11. Claimant argues this was an "unfounded" statement and "carr[ies] an intimation" that claimant was dishonest. Doc. 17, at 18-19 & n.7. It is not apparent to the court how the ALJ reached the conclusion that claimant's earnings were inconsistent with the requirement that claimant be "on-call" a minimum of forty-eight hours per month. Nevertheless, the court does not find this statement by the ALJ troublesome because the ALJ did not reference the statement in assessing claimant's credibility. Rather, the ALJ made this reference only with regard to summarizing claimant's prior gainful activity.

Accordingly, the court does not find the ALJ erred in assessing claimant's credibility.

## VIII.  CONCLUSION

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> [W]here the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper "where the total record overwhelmingly supports a finding of disability").

In the present case, the court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the court finds the ALJ erred only with regard to not considering whether claimant's impairments met or equaled Listing 11.03. Accordingly, the Court finds that remand is appropriate.

Accordingly, for the reasons set forth above in Section VII(A)(1), this case is reversed and remanded to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

**IT IS SO ORDERED** this 28th day of October, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa